UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** § § § § **Plaintiff,** § § **v.** § **EP-23-cv-00364-FM** § **FREEDOM FOREVER TEXAS,** a Delaware § Limited Liability Company § § **Defendant.** § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant FREEDOM FOREVER TEXAS, LLC ("Freedom") is a corporation organized and existing under the laws of Delaware and can be served via registered agent Corporation Service Company, dba CSC-Lawyers INCO, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3. Non-named Defendant JORGE CARDENAS ("Cardenas") is an authorized representative of Defendant Freedom and made unauthorized calls and text messages to Plaintiff on behalf of Defendant Freedom.

**JURISDICTION AND VENUE**

4. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow*

1

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

5.     This Court has general personal jurisdiction over Defendant because Defendant maintains physical offices in Texas including in this very District.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when Plaintiff received every single unauthorized call from Defendants is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20. Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

21. Defendant Freedom offers solar panel services.

22. Plaintiff received at least thirteen (13) unauthorized calls to his personal cell phone ending in 4604 from Defendant Freedom from September 18, 2023, to September 25, 2023, soliciting solar panel installation.

23. Each of the phone calls in this Complaint is a robocall made utilizing robocalling software that spoofs caller identification. The software is called Kixie.

24. The Kixie website, https://www.kixie.com, boasts that Kixie, "Intelligent auto-dial helps you reach your leads when buying intent is highest."

25. The Kixie website advertises, "Automated outreach for lightning fast speed-to-lead."

26. Plaintiff received a series of telemarketing phone calls from Cardenas. Each of the phone calls was answered by Plaintiff and had a 915 area code that made the call appear as though it were local.

27. Plaintiff has outlined each of the phone calls in Table A.

28. When Plaintiff received the twelfth phone call Plaintiff answered and asked Cardenas why he keeps calling him from a 915 area code if he (Cardenas) is located in Florida. Cardenas responded by telling Plaintiff that the calls are "autodialed" and use "spoof caller ID to make the calls appear local."

29. Cardenas sent Plaintiff a text message saying, "Apologize for the confusion of numbers."

30. Plaintiff later sent Cardenas a text message asking, "What's the name of that spoofing technology?"

31. Cardenas responded to Plaintiff's question in paragraph 30 by asking Plaintiff, "The local call feature?" Plaintiff responded, "Yes," and Cardenas responded by telling Plaintiff, "Kixie."

32. Cardenas is an authorized Freedom representative, employee and/or agent.

33. Through information and belief, Cardenas called Plaintiff additional times that will be

revealed during Discovery.

34. Table A shows the calls sent to Plaintiff by Defendant Freedom.

TABLE A:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 09/18/2023 | 11:13 AM | 915-265-9208 | Auto dialing technology with spoofed caller ID |
| 2. | 09/19/2023 | 4:46 PM | 915-289-9269 | Auto dialing technology with spoofed caller ID |
| 3. | 09/20/2023 | 11:27 AM | 915-265-0306 | Auto dialing technology with spoofed caller ID |
| 4. | 09/21/2023 | 12:51 PM | 915-755-6176 | Auto dialing technology with spoofed caller ID |
| 5. | 09/22/2023 | 8:09 AM | 915-265-1338 | Auto dialing technology with spoofed caller ID |
| 6. | 09/22/2023 | 3:50 PM | 915-841-6965 | Auto dialing technology with spoofed caller ID |
| 7. | 09/22/2023 | 5:32 PM | 915-895-7581 | Auto dialing technology with spoofed caller ID |
| 8. | 09/22/2023 | 9:10 AM | 915-895-7597 | Auto dialing technology with spoofed caller ID |
| 9. | 09/25/2023 | 9:52 AM | 915-726-5832 | Auto dialing technology with spoofed caller ID |
| 10. | 09/25/2023 | 10:16 AM | 915-328-7970 | Auto dialing technology with spoofed caller ID |
| 11. | 09/25/2023 | 11:16 AM | 915-895-7581 | Auto dialing technology with spoofed caller ID |
| 12. | 09/25/2023 | 1:51 PM | 915-289-9103 | Auto dialing technology with spoofed caller ID |
| 13. | 09/25/2023 | 4:17 PM | 862-362-5001 | Auto dialing technology with spoofed caller ID |

35. Plaintiff never gave his consent to Defendant to receive robocalls, auto-dialed calls, or spoofed phone calls.

36. Each of the phone calls alleged in this Complaint is a knowing and willful because caller identification can only be spoofed by intentional means.

37. No emergency necessitated any of the alleged calls.

38. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## VICARIOUS LIABILITY OF DEFENDANT

39. Defendant Freedom through their authorized representative Cardenas made multiple auto-dialed robocalls to Plaintiff and intentionally spoofed the phone numbers.

40. Cardenas utilizing software provided by Freedom.

41. Cardenas uses proprietary information and systems provided by Defendant Freedom.

42. Freedom authorized Cardenas to make the phone calls at issue here.

43. Freedom was aware of the phone calls being made by Cardenas and accepts referrals from Cardenas pursuant to the authorization provided to Cardenas by Freedom.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

44. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

45. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

46. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

47. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER**

48. The calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 16 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**COUNT ONE:**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))**

49. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-48.

50. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent.

51. Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

52. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

53. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing

robocalls to cellular telephone numbers without the prior express written consent of the called party.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $1,500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against Defendants for thirteen (13) calls;

E.  An award to Mr. Callier of damages, as allowed by law under the TCPA;

F.  An award to Mr. Callier of interest, and costs, as allowed by law and equity;

G.  Such further relief as the Court deems necessary, just, and proper;


September 28, 2023,

Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com