UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**FREEDOM FOREVER TEXAS,** a Delaware Limited Liability Company, and **EMPOWERED SOLUTIONS**, **MITCHELL FRAKER**, and **AURORA SOLAR, INC.,** a Delaware Corporation<br><br>      **Defendants.** | EP-23-cv-00364-FM |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Brandon Callier with his First Amended Complaint and will allege and show as follows:

### PARTIES

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant FREEDOM FOREVER TEXAS, LLC ("Freedom") is a corporation organized and existing under the laws of Delaware and can be served via registered agent Corporation Service Company, dba CSC-Lawyers INCO, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3. Defendant EMPOWERED SOLUTIONS ("Empowered") is an unknown business entity located in Florida, operating the website https://www.empoweredsolutions.com. Empowered's website does not have an address, phone number, or any contact information.

1

4. Defendant MITCHELL FRAKER ("Fraker") is a principal owner and founder of Defendant Empowered, personally participated in and directed the alleged activities herein, and can be served at 2932 SE Buccaneer Circle, Port Saint Lucie, Florida 34952.

5. Defendant AURORA SOLAR, INC. ("Aurora") is a corporation organized and existing under the laws of Delaware and can be served via registered agent Incorporating Services, LTD., 3500 S Dupont Highway, Dover, Delaware 19901.

## JURISDICTION AND VENUE

6. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7. This Court has general personal jurisdiction over Defendant Freedom because Defendant Freedom maintains physical offices in Texas including in this very District.

8. This Court has specific personal jurisdiction over Defendants Empowered and Fraker because Empowered and Fraker purposefully directed telephone calls into the State of Texas and intentionally spoofed Texas area codes in order to represent themselves as being located and operating in the state of Texas.

9. This Court has specific personal jurisdiction over Defendant Aurora because Aurora purposefully directed telephone calls into Texas and purposefully availed themselves of the laws and protections of this state.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when Plaintiff

received every single unauthorized call from Defendants is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

11.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls are a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

17.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

20.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

4

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FACTUAL ALLEGATIONS**

24. Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

25. Defendant Freedom offers solar panel services.

26. Defendant Empower solicits solar panels for and on behalf of Defendant Freedom.

27. Plaintiff received a series of anonymous phone calls from an offshore telemarketer soliciting solar panels. Those phone calls number in the hundreds but are not a part of this Complaint.

28. Defendant Freedom filed a Motion to Dismiss ("MTD") on November 3, 2023. As part of that MTD Defendant Freedom included a transcription of a phone call in which Freedom alleges Plaintiff gave his express consent for the phone calls made by Defendant Empower. The transcript states:

>CALLER: "Would you allow our expert to reach you back [even] if your number is listed on federal, state, or local do-not-call lists?"
>
>PLAINTIFF: Yes.

29. Plaintiff responded "yes" in paragraph 28 in order to determine who had hired the anonymous telemarketer to place the phone calls.

30. The request for consent in paragraph 28 is not a request for consent to receive phone calls made using an ATDS and is not applicable to 227(b).

31. The request for consent in paragraph 28 is ambiguous and not specific to any company. It is anonymous in nature and does not give Defendant Freedom or Defendant Empower permission to make any phone calls to Plaintiff.

32. Plaintiff received at least thirteen (13) unauthorized calls to his personal cell phone ending in 4604 from Defendant Freedom from September 18, 2023, to September 25, 2023, soliciting solar panel installation.

33. Plaintiff never gave Defendant Empower permission to call him with intentionally spoofed telephone numbers that were generated using auto-dialing technology and auto-dialing systems.

34. Each of the phone calls in this Complaint is a robocall made utilizing robocalling software that spoofs caller identification. The software is called Kixie.

35. The Kixie website, https://www.kixie.com, boasts that Kixie, "Intelligent auto-dial helps you reach your leads when buying intent is highest."

36. The Kixie website advertises, "Automated outreach for lightning fast speed-to-lead."

37. Plaintiff received a series of telemarketing phone calls from Cardenas. Each of the phone calls was answered by Plaintiff and had a 915-area code that made the call appear as though it

were local.

38.     Plaintiff has outlined each of the phone calls in Table A.

39.     When Plaintiff received the twelfth phone call Plaintiff answered and asked Cardenas why he keeps calling him from a 915-area code if he (Cardenas) is located in Florida. Cardenas responded by telling Plaintiff that the calls are "autodialed" and use "spoof caller ID to make the calls appear local."

40.     Cardenas sent Plaintiff a text message saying, "Apologize for the confusion of numbers."

41.     Plaintiff later sent Cardenas a text message asking, "What's the name of that spoofing technology?"

42.     Cardenas responded to Plaintiff's question in paragraph 41 by asking Plaintiff, "The local call feature?" Plaintiff responded, "Yes," and Cardenas responded by telling Plaintiff, "Kixie."

43.     Cardenas is an authorized Freedom representative, employee and/or agent.

44.     Through information and belief, Cardenas called Plaintiff additional times that will be revealed during Discovery.

45.     On October 12, 2023, Plaintiff began to receive phone calls that displayed 209-457-2342 on the caller identification.

46.     Plaintiff received at least eleven (11) calls from phone number 209-457-2342 on October 19, 2023, alone.

47.     On October 19, 2023, Plaintiff answered the phone and an offshore telemarketer said "he was calling to confirm my solar appointment."

48.     On October 19, 2023, Plaintiff had an appointment with an Aurora Solar representative as a direct result of the appointment set by the telemarketer calling from phone number 209-457-2342.

49. On October 19, 2023, Defendant Auora sent Plaintiff an email from do-not-reply@auorasolar.com that contained a link to a Freedom Forever solar proposal.

50. The link in paragraph 49 has since expired. Plaintiff will get access to the link that contains the name and contact information of the agent during discovery.

51. Table A shows the calls sent to Plaintiff by Defendant Freedom.

TABLE A:

| Number | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 09/18/2023 | 11:13 AM | 915-265-9208 | Auto dialing technology with spoofed caller ID |
| 2. | 09/19/2023 | 4:46 PM | 915-289-9269 | Auto dialing technology with spoofed caller ID |
| 3. | 09/20/2023 | 11:27 AM | 915-265-0306 | Auto dialing technology with spoofed caller ID |
| 4. | 09/21/2023 | 12:51 PM | 915-755-6176 | Auto dialing technology with spoofed caller ID |
| 5. | 09/22/2023 | 8:09 AM | 915-265-1338 | Auto dialing technology with spoofed caller ID |
| 6. | 09/22/2023 | 3:50 PM | 915-841-6965 | Auto dialing technology with spoofed caller ID |
| 7. | 09/22/2023 | 5:32 PM | 915-895-7581 | Auto dialing technology with spoofed caller ID |
| 8. | 09/22/2023 | 9:10 AM | 915-895-7597 | Auto dialing technology with spoofed caller ID |
| 9. | 09/25/2023 | 9:52 AM | 915-726-5832 | Auto dialing technology with spoofed caller ID |
| 10. | 09/25/2023 | 10:16 AM | 915-328-7970 | Auto dialing technology with spoofed caller ID |
| 11. | 09/25/2023 | 11:16 AM | 915-895-7581 | Auto dialing technology with spoofed caller ID |
| 12. | 09/25/2023 | 1:51 PM | 915-289-9103 | Auto dialing technology with spoofed caller ID |

| 13. | 09/25/2023 | 4:17 PM | 862-362-5001 | Direct call from Cardenas after being told to stop calling |

52.     TABLE B Shows Calls Made by an Unknown Telemarketer on Behalf of Defendant Freedom.

53.     TABLE B

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 10/12/2023 | 5:39 PM | 209-457-2342 | Offshore Telemarketer |
| 2. | 10/16/2023 | 9:13 AM | 209-457-2342 | Offshore Telemarketer |
| 3. | 10/18/2023 | 9:31 AM | 209-457-2342 | Offshore Telemarketer |
| 4. | 10/18/2023 | 10:15 AM | 209-457-2342 | Offshore Telemarketer |
| 5. | 10/18/2023 | 10:17 AM | 209-457-2342 | Offshore Telemarketer |
| 6. | 10/18/2023 | 2:38 PM | 209-457-2342 | Offshore Telemarketer |
| 7. | 10/18/2023 | 3:37 PM | 209-457-2342 | Offshore Telemarketer |
| 8. | 10/18/2023 | 4:17 PM | 209-457-2342 | Offshore Telemarketer |
| 9. | 10/19/2023 | 2:26 PM | 209-457-2342 | Offshore Telemarketer |
| 10. | 10/19/2023 | 2:56 PM | 209-457-2342 | Offshore Telemarketer |
| 11. | 10/19/2023 | 3:12 PM | 209-457-2342 | Offshore Telemarketer |
| 12. | 10/19/2023 | 3:19 PM | 209-457-2342 | Offshore Telemarketer |
| 13. | 10/19/2023 | 3:26 PM | 209-457-2342 | Offshore Telemarketer |

| 14. | 10/19/2023 | 3:34 PM | 209-457-2342 | Offshore Telemarketer |
| 15. | 10/19/2023 | 3:39 PM | 209-457-2342 | Offshore Telemarketer |
| 16. | 10/19/2023 | 3:40 PM | 209-457-2342 | Offshore Telemarketer |
| 17. | 10/19/2023 | 4:04 PM | 209-457-2342 | Offshore Telemarketer |
| 18. | 10/19/2023 | 4:15 PM | 209-457-2342 | Offshore Telemarketer |
| 19. | 10/19/2023 | 4:53 PM | 209-457-2342 | Offshore Telemarketer |

54. Plaintiff never gave his consent to Defendants to receive robocalls, auto-dialed calls, or spoofed phone calls.

55. Each of the phone calls alleged in this Complaint is a knowing and willful because caller identification can only be spoofed by intentional means.

56. No emergency necessitated any of the alleged calls.

57. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

58. Plaintiff infers an ATDS was used in the Table A calls because:

   a. On September 25, 2023, Jorge Cardenas literally told Plaintiff that he used an "autodialer" to make the phone calls to Plaintiff.

   b. Through information and belief Jorge Cardenas has a better and more intimate knowledge of the equipment he used to call Plaintiff.

   c. Cardenas placed twelve (12) phone calls to Plaintiff each with a different caller identification number showing.

   d. Cardenas told Plaintiff the name of the autodialing system used to make the phone

      calls and gave plaintiff the website where the autodialing system could be purchased.

    e. The website given to Plaintiff by Cardenas, http://www.kixie.com, advertises "automated outreach," "automation platforms," "automated calling & texting," and "intelligent auto-dial" on its website, further corroborating Cardenas' assertion that he used an auto-dialing system obtained from Kixie in order to call Plaintiff.

## PRIOR EXPRESS CONSENT

59. The FTC rules require that the requested consent be clear and conspicuous in that the consumer will receive future calls that deliver prerecorded messages and autodialed messages by or on behalf of a specific seller.

60. Consent under the TCPA cannot be anonymous or ambiguous. Obtaining "consent" on behalf of unnamed companies is not permissible as it would theoretically allow every company in the country to claim they gained consent from a single ambiguous opt-in.

61. The Defendants in this case did not get Plaintiff's prior consent to send automated messages.

62. Under the TSR, the seller bears the burden of proving that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.

63. Neither Defendant Freedom or Defendant Empower obtained consent from Plaintiff to send automated phone calls to Plaintiff.

## VICARIOUS LIABILITY OF DEFENDANT FREEDOM

64. Defendant Freedom through their authorized representative Empower made multiple auto-dialed robocalls to Plaintiff and intentionally spoofed the phone numbers.

65.     Empower used utilizing software provided by Freedom.

66.     Cardenas uses proprietary information and systems provided by Defendant Freedom.

67.     Freedom authorized Cardenas to make the phone calls at issue here.

68.     Freedom was aware of the phone calls being made by Cardenas and accepted referrals from Cardenas pursuant to the authorization provided to Cardenas by Freedom.

69.     Freedom Forever gave access to their proprietary systems and software to Defendants Empowered and Aurora.

70.     Aurora hired an offshore telemarketer to make phone calls on their behalf. Aurora is the agent of Freedom Forever and the offshore telemarketer is the subagent of Freedom Forever.

71.     Empowered and Aurora made the phone calls at the direction and control of Freedom Forever.

72.     Freedom Forever exercised interim control over whom and under what conditions referrals would be accepted.

73.     Freedom Forever has been aware of the TCPA-violating phone calls made by salespersons for years and has ratified the behavior by maintaining the salespeople responsible for the violations and continuing to accept referrals despite the knowledge of the violations.

### PERSONAL LIABILITY OF DEFENDANTS PIERCE AND FRAKER

74.     Defendant Mr. Fraker personally participated in the texts at issue because Defendant Fraker personally directed the text messages to be sent to Texas residents with Texas area codes.

75.     Fraker is the principal officer of Defendant Empowered.

76.     Fraker closely holds Defendant Empowered and is intimately involved in all decision-making and legal activities of Defendant Empowered.

77.     Mr. Fraker, made the decision to purchase auto dialing spoofing technology, trained their

employees on the use of such technology, and directed their employees to use the technology with the intention of breaking state and federal laws.

78. Defendant Fraker has direct and personal involvement in and ultimate control over every aspect of Defendant Empowered's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.

79. Defendant Fraker at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint,

80. There is precedent in the Western District for holding corporate officers personally liable when they participate in the alleged actions:

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

> The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

> Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell

corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

81. The Same Court held that corporate officers were also personally liable for DTPA violations;

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

82. Defendant Fraker is the manager and owner of Defendant Empowered and controls the day-to-day operations of Empowered and directs their employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

83. Defendant Mr. Fraker is not merely a bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

84. Defendant Fraker is well aware their conduct violated the TCPA and refused to alter their

14

behavior.  Defendant Fraker is the principal director and officer of Defendant Empowered and the only person with the power to make unlawful, fraudulent, and unethical behavior stop

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

85.     Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

86.     Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

87.     Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

88.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

89.     The calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 16 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## COUNT ONE:
**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))**
**(Against Defendants Freedom and Empowered)**

90. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-89.

91. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent.

92. The phone calls were made using and ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

93. Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

94. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

95. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## COUNT TWO

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(Against Defendants Freedom and Aurora)**

96. Plaintiff incorporates the preceding paragraphs 1-89 as if fully set forth herein.

97. The foregoing acts and omissions of Defendants Freedom and Aurora and/or their affiliates or agents constitute and violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2),

98. Defendants Freedom and Aurora sent at least nineteen (19) phone calls to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the phone calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

99. Plaintiff was statutorily damaged at least nineteen (19) times under 47 U.S.C. § 227(c)(3)(F) by Defendants Freedom and Aurora's calls described above, in the amount of $500 per phone call.

100. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(3)(F).

101. Plaintiff is entitled to an award up to $1,500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1,500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against Defendants Freedom and Empowered for twelve (12) calls;

E. An award of $1,500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against Defendants Freedom and Aurora.

F. An award to Mr. Callier of damages, as allowed by law under the TCPA;

G. An award to Mr. Callier of interest, and costs, as allowed by law and equity;

H. Such further relief as the Court deems necessary, just, and proper;

November 24, 2023,

Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com