**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON CALLIER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-00364-FM** |
| | ) | |
| **FREEDOM FOREVER TEXAS,** | ) | |
| **Defendant.** | ) | |
| | ) | |

**OBJECTIONS OF DEFENDANT, FREEDOM FOREVER TEXAS, TO**
**MAGISTRATE JUDGE'S REPORT & RECOMMENDATION CONCERNING**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant, Freedom Forever Texas ("Freedom Forever"), submits its objections to the Report & Recommendation ("R&R") of the Magistrate Judge recommending that the Court deny Freedom Forever's motion to dismiss the First Amended Complaint ("Complaint") filed by Plaintiff, Brandon Callier.

## INTRODUCTION

Pro se Plaintiff Brandon Callier alleges violations of the Telephone Consumer Protection Act ("TCPA") arising from phone calls he allegedly received from a co-Defendant's employee. The Complaint indisputably establishes that (1) Plaintiff consented to receive all but one of the calls at issue, and (2) the calls – at least all but one of them – were not made via an automatic telephone dialing system ("ATDS"). The R&R nevertheless recommends that the Court deny the motion to dismiss. Upon the required *de novo* review, that recommendation cannot stand.

First, Plaintiff provided express consent to receive phone calls concerning solar products from a single person – Jorge Cardenas, an employee of co-Defendant Empowered Solutions – who has no connection whatsoever with Freedom Forever, then engaged with Cardenas for numerous

targeted calls that he claims violated the TCPA.

Consent aside, the R&R erroneously held that Plaintiff plausibly alleged that the calls from Cardenas were made via an ATDS. The R&R ignores binding Supreme Court precedent, which, as multiple cases in this District have held, requires both pleading (and, ultimately, proof) that the allegedly offending calls were made from "equipment which has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator; and ... to dial such numbers." Plaintiff does not even attempt to plead that fundamental TCPA requirement here, and the R&R unaccountably excuses Plaintiff from making such allegations. Indeed, in a demonstration that the ATDS allegations in the Complaint were wholly inadequate, the Court erroneously conducted its own research into a third-party website Plaintiff cites in the Complaint, essentially selected and then added unpled portions of the website content to the Complaint, then used those selected, unpled hearsay allegations from the website to hold that Plaintiff plausibly alleged an ATDS. Nothing in Fifth Circuit precedent permits the sort of exercise described in the R&R. That was error.

Additionally, Plaintiff seeks a "permanent injunction" even though he fails to plead a risk of imminent and future harm as required to obtain such an extraordinary remedy. In short, the R&R contains multiple legal errors. Freedom Forever's objections, therefore, should be sustained and the Court should dismiss Plaintiff's Complaint.

## **RELEVANT FACTUAL BACKGROUND**

## I.      **PLAINTIFF'S CONSENT TO RECEIVE THE ALLEGED CALLS**

The Complaint alleges that Plaintiff received 13 calls in violation of the TCPA.  (D.E. 10, ¶ 32.)  None of those calls actually was made by Freedom Forever; instead, they allegedly were made by Cardenas, who, in fact, is employed by co-Defendant Empowered Solutions. Plaintiff

specifically alleges – and concedes – that, at a minimum, he provided consent for all calls following the initial call:

> CALLER: Would you allow our expert to reach you back [even] if your number is listed on federal, state, or local do-not-call lists?"
>
> PLAINTIFF: *Yes*.

(D.E. 10, ¶ 28 (emphasis added).) Based on Plaintiff's express consent to receive further communications, Cardenas contacted Plaintiff to arrange for a home visit and potential sale of solar products to Plaintiff. Each call, as the Complaint discloses, was made by one person – Cardenas – targeted to Plaintiff for a specific reason, which was "solar power installation." (*Id.*, ¶ 32.) Furthermore, Plaintiff and Cardenas even exchanged text messages – at least one of was initiated by Plaintiff.  (*Id.*, ¶ 41 ("Plaintiff later sent Cardenas a text message . . .").)

Plaintiff asserts that Cardenas disclosed to him that a software program called "Kixie" generated the calls. (*Id.*, ¶ 34.) Plaintiff does not allege that "Kixie" is somehow related to Freedom Forever, nor is there any allegation that the operator of the Kixie website has any relationship to any party in this case. Also, there is no allegation that Kixie utilizes a random or sequential generator to produce telephone numbers.

## II.   PROCEDURAL BACKGROUND

Freedom Forever filed its motion to dismiss on December 22, 2023. (D.E. 17.) The Court referred the motion, for a report and recommendation, to the Magistrate Judge. (D.E. 30), which issued the R&R on April 2, 2024, recommending that the Court deny the motion to dismiss. (D.E. 31.) Freedom Forever now files its objections to the R&R.

## <u>ARGUMENT</u>

Freedom Forever specifically objects to the following portions of the R&R: (1) to the extent the R&R even addressed consent, the apparent ruling that Plaintiff did not consent to receive the

calls of which he now complains; (2) the ruling that Plaintiff plausibly pleaded an ATDS; and (3) the ruling that Plaintiff has pleaded the necessary elements for a permanent injunction.

## I.   LEGAL STANDARDS

### A.  *De Novo* **Review of R&R**

"A party may serve and file specific, written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure *de novo* review by the district court." *Hurdsman v. Gleason*, 2024 WL 140248, *1 (W.D. Tex. Jan. 12, 2024) (citing 28 U.S.C. § 636(b)(1)(C)). "When a party files timely written objections to a magistrate judge's report and recommendation, the district judge must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Burns v. Nielsen*, 456 F. Supp. 3d 807, 817 (W.D. Tex. 2020) (quoting 28 U.S.C. § 636(b)(1)); *see also Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991) ("A party is entitled to a de novo review of a magistrate's finding and recommendations . . . if objections are made to the findings.").

"In *de novo* review, the Court 'conduct[s] an independent review of the entire record and ... the matters raised by the objections.'" *Zuniga v. Yeary*, 2020 WL 1329908, *1 (W.D. Tex. Mar. 20, 2020) (quoting *Campos v. U.S. Parole Comm'n*, 984 F. Supp. 1011, 1017 (W.D. Tex. 1996), *aff'd*, 120 F.3d 49 (5th Cir. 1997)). When the Court conducts the required *de novo* review, it should conclude that the Magistrate Judge committed multiple legal errors and that Freedom Forever's objections should be sustained, resulting in its motion to dismiss being granted.

### B.  **Rule 12(b)(6)**

"[T]he purpose of a Rule 12(b)(6) motion to dismiss is to weigh the legal sufficiency of a complaint." *In re Think3, Inc.*, 529 B.R. 147, 184 (Bankr. W.D. Tex. 2015). To avoid dismissal, a plaintiff must provide the defendant with "fair notice of what the ... claim is and the grounds upon

which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While courts "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff," courts "do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quotations omitted).

Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As the Fifth Circuit recently held:

> To withstand a motion to dismiss under Rule 12(b)(6), a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only *conceivably* give rise to relief don't suffice. Thus, though [courts] generally take as true what a complaint alleges, [they] do not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action.

*Smith v. Heap*, 31 F.4th 905, 910 (5th Cir. 2022) (quotations omitted; emphasis original).

## II.   UPON *DE NOVO* REVIEW, THE COURT SHOULD DISMISS PLAINTIFF'S TCPA § 227(b) CLAIM.

In addressing Plaintiff's claim under § 227(b) of the TCPA, the R&R seemingly overlooked Freedom Forever's consent argument, focusing almost entirely on the ATDS issue. On both issues, the R&R is erroneous and Freedom Forever's objections should be sustained.

### A.   The R&R Ignored Freedom Forever's Consent Argument.

The first problem with the R&R is that it ignores the fact that Plaintiff expressly consented to receive calls from Cardenas, as admitted in the Complaint. Freedom Forever detailed Plaintiff's consent in its motion and reply (*see* D.E. 17 at 3-4; D.E. 29 at 3-4), yet the R&R ignores Plaintiff's consent with the exception of a footnote that merely states that Plaintiff may not have consented to the *first* call. (*See* D.E. 31 at 8 n.4.) While Freedom Forever believes Plaintiff consented to the first call as well, even taking the R&R's footnote at face value, it is plain, based on the Complaint,

that Plaintiff provided his express consent to receive every subsequent call from Cardenas.

The R&R ignores the governing legal principles Freedom Forever discussed in the briefing, particularly that there is no need to engage in an analysis of the ATDS issue if Plaintiff consented to receive calls in the first instance. The law is clear that "the TCPA's prohibition on using an autodialer applies only absent the express consent of the recipient." *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017) (quotations omitted). Stated differently, "[w]here an ATDS has not been used, the separate issue of consent is irrelevant." *Dawson v. Porch.com*, 2023 WL 3947831 n.2 (W.D. Wash. June 11, 2023) (citing *Borden v. eFinancial, LLC*, 53 F.4th 1230, n.1 (9th Cir. 2022)).

Here, the Complaint plainly discloses that Plaintiff expressly consented to be contacted even "if your number is listed on federal, state, or local do-not-call lists." (D.E. 10, ¶ 28.) At a minimum, even accepting the R&R's assumption that Plaintiff did not consent to the first call, the Court should dismiss Plaintiff's TCPA claims as to every call following the "consent" call because Plaintiff indisputably consented to all subsequent calls, and there is no allegation that he ever revoked that consent.

**B.  The R&R Erroneously Held Plaintiff Made Plausible Allegations of an ATDS.**

Moreover, the R&R erroneously concluded that Plaintiff's Complaint plausibly alleged an ATDS. The R&R fails to cite, much less apply, controlling precedent and pertinent opinions from this District, and it primarily relies on selective, hearsay portions of a third-party website that is the product of the Court's, not Plaintiff's, independent research into the allegations, which transformed the analysis into a question of whether arbitrarily selected extrinsic evidence creates the plausibility of an ATDS.

**1.  The R&R Ignores the Supreme Court ATDS Precedent of *Facebook*.**

Inexplicably, the R&R ignored the governing law on pleading and proving an ATDS. The TCPA defines "'automatic telephone dialing system' as 'equipment which has the capacity ... to

store or produce telephone numbers to be called, using a random or sequential number generator; and ... to dial such numbers.'" *Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 484 (W.D. Tex. 2020) (quoting 47 U.S.C. § 227(a)(1)).  A court in this District has acknowledged the controlling Supreme Court opinion that "this definition encompasses only equipment that has 'the capacity either to store a telephone number using a random or sequential generator' or 'to produce a telephone number using a random or sequential number generator.'" *Atkinson v. Pro Custom Solar LLC*, 2022 WL 4071998, *6 (W.D. Tex. Sept. 1, 2022) (quoting *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021)). "In other words, 'in all cases, whether storing or producing numbers to be called, *the equipment in question must use a random or sequential number generator*.'" *Id.* (quoting *Facebook*, 141 S. Ct. at 1170) (emphasis added); *see also Suttles*, 461 F. Supp. 3d at 485 ("Thus, an ATDS must either have the capacity to store telephone numbers to be called using a random or sequential generator or produce telephone numbers to be called using a ransom or sequential number generator.").

Yet, the R&R does not even cite *Facebook*, let alone attempt to apply that precedent to Plaintiff's deficient ATDS allegations, which do not allege that "the equipment in question . . . use[d] a random or sequential number generator" as *Facebook* requires. Indeed, the Complaint itself does not even use the words "random," 'sequential," or "generator," failing even to approach the *Facebook* standard, rendering it nothing sort of sheer speculation to construe Plaintiff's references to an ATDS as incorporating that standard. That failure is sufficient in itself to reject the R&R. *See, e.g.*, *DeMesa v. Treasure Isl., LLC*, 2022 WL 1813858, *2 (D. Nev. June 1, 2022) ("[T]he several district courts that have confronted the issue since *Duguid* have all reached the same conclusion: to state a claim under the autodialer provision of the TCPA, a plaintiff must allege that the random- or sequential-number generator generated the phone numbers that the

autodialer called or stored to be called later."); *Watts v. Emerg. Twenty Four Inc.*, 2021 WL 2529613, *3 (N.D. Ill. June 21, 2021) (dismissing complaint where plaintiff "does not allege that [defendant's] system uses a random or sequential number generator"); *McEwen v. Nat. Rifle Ass'n*, 2021 WL 1414273, *7 (D. Me. Apr. 14, 2021) ("After the *Duguid* opinion, the ATDS portion of the claim requires an allegation that [defendant] used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that its dialing system has that capability.").

### 2. The R&R Misstated the Law by Suggesting That "Speaking with a Live Person" Applies Only to Prerecorded Messages When Considering ATDS Allegations.

Beyond the failure even to cite, let alone apply, *Facebook*, the R&R seemed to hold that speaking with a live person does not negate the possibility of an ATDS, suggesting that the "live person" principle only applies to allegations of prerecorded calls. (D.E. 31 at 6-7.) That suggestion, quite simply, is incorrect. The law could not be clearer on this point: "***Speaking with a live person generally undercuts allegations of ATDS use***." *Nickson v. Advanced Marketing & Processing, Inc.*, 2023 WL 4932879, *5 (D. Md. Aug. 2, 2023) (emphasis added). *Nickson* dismissed TCPA claims because the plaintiff alleged he spoke with a live person. Consistent with *Nickson*, other courts have dismissed TCPA claims where the complaint alleged the plaintiff spoke with a live person, which, the courts held, negated any possibility that an ATDS was used. *See Hampton v. Barclays Bank Del.*, 2019 WL 4256371, *6 (D. Kan. Sept. 9, 2019) ("[P]laintiff's allegations about a 'live person' on the call appear to contradict his conclusory allegation that [defendant] used an ATDS. Thus, plaintiff's Complaint fails to state a plausible TCPA claim."); *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) ("On the four occasions Defendant made phone calls to Plaintiff, Plaintiff alleges that he *spoke* with Defendant's representatives, which negates a claim that the calls were made by an automated dialing system or artificial or prerecorded voice.") (emphasis original).

8

In contrast to these cases, the R&R did not cite any case allowing a TCPA claim to advance past the Rule 12 stage where the plaintiff, as does Plaintiff here, alleged that he spoke to a live person on every call. In other words, the R&R plainly erred by holding that a plaintiff can escape dismissal of a TCPA claim that requires proof of an ATDS where that plaintiff admits that he spoke to a live person. That is not the law, and the R&R should be rejected by ruling otherwise.

Adding to the absence of an ATDS is the fact that, as Plaintiff admits, each of the alleged calls was made by the *same person* – Cardenas – and that Plaintiff spoke live to Cardenas each time.  (*See* D.E. 10, ¶ 58(c) (alleging that "Cardenas placed twelve (12) phone calls to Plaintiff"), ¶ 37 (asserting that "Plaintiff received a series of telemarketing phone calls from Cardenas").) Clearly, the alleged calls by Cardenas to Plaintiff were targeted and were not random.  Plaintiff gave Cardenas his consent to be called, which led to the "series of" calls from Cardenas to Plaintiff thereafter. Therefore, Plaintiff's own allegations, even if taken as true, demonstrate that these were the types of "targeted" calls that preclude a finding of an ATDS, consistent with the leading decisions from this District. *See, e.g.*, *Samataro v. Keller Williams Realty, Inc.*, 2021 WL 4927422, *4 (W.D. Tex. Sept. 27, 2021) ("This Court adopts this understanding of the decision in *Facebook* and dismisses Plaintiffs' [TCPA] claim with prejudice because it is based on calls made to specific individuals in connection with their property listings, whose numbers were compiled into a preproduced list of phone numbers, as opposed to generated randomly by an autodialer."); *Suttles*, 461 F. Supp. 3d at 487 (granting motion to dismiss where plaintiff's allegations demonstrated that "he received *targeted* messages," which "militates against finding that [defendant] used an ATDS") (emphasis original). Consequently, Plaintiff fails plausibly to plead an ATDS, thus warranting dismissal by sustaining Freedom Forever's objections.

### 3.   The Magistrate Judge Erred by Considering the Kixie Website.

After ignoring *Facebook* and misstating the "live person/ATDS" law, the R&R held that Plaintiff plausibly alleged an ATDS by referencing the alleged contents of a third-party website, Kixie. (*See* D.E. 31 at 6-7.) The court cited only one case that considered a website in ruling on a motion to dismiss – a footnote from a 15-year-old case from another Circuit. (*Id.* at 6 (citing *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009).) The errors in the R&R's use of and reliance on the Kixie website are numerous, and lay the foundation for a dangerous precedent if the R&R is upheld.[1]

### a.   Error by Utilizing Website of a Third Party, Not a Litigant to the Case

First, the R&R misapplied its own legal principle. While it might occasionally be appropriate to consider the contents of a website in ruling on a 12(b)(6) motion, the principle has only been applied when the *defendant* is moving to dismiss and cites *its own website* to bolster its dismissal argument. Thus, in *Atl. Recording*, the R&R's only cited case on this subject, the court assessed the defendant's own website, not a third-party website as the R&R did here. There is no legal basis to rely on the selective hearsay contents of a third party's website to assess – let alone deny – a motion to dismiss.[2]

---

[1] To be clear, Freedom Forever does not raise this issue because it fears that the Court has discovered that, based on the Kixie website, an ATDS was in fact used. If the case proceeds, the evidence will show that no ATDS was used at any point for the calls that underlie the Complaint.
[2] There can be no serious dispute that statements on a third-party's website are hearsay. *See, e.g.*, *Piccard v. Deedy*, 2021 WL 4846132, *3 (N.D. Ga. Oct. 15, 2021) ("Plaintiff's statements about what a website indicates are hearsay."); *Exam. Bd. of Prof. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 904 (D. Colo. 2021) ("The Court agrees that the two website statements at issue are hearsay under the Federal Rules of Evidence because plaintiff attempts to introduce both statements to prove the truth of the matter they assert.").

**b.   Error to "Incorporate by Reference" Absent Judicial Notice**

Second, for a court to consider a website as part of a Rule 12 motion, the website must be, as the R&R's sole "authority" states, "incorporated by reference into the Complaint." *Atl. Recording Corp.*, 603 F. Supp. 2d at 694 n.3. The R&R apparently held that the Kixie website was incorporated into the Complaint (*see* D.E. 31 at 7 (referencing the "incorporated Kixie link")), but that's not true; nowhere in the Complaint does Plaintiff purport to state that the entire Kixie website somehow is incorporated into his Complaint. Contrary to the R&R, the law is that a complaint's quotations of limited portions of a website "are not a blanket permission to incorporate unrelated information found elsewhere on [website's] domain." *Greg Young Pub. v. CafePress, Inc.*, 2016 WL 610675, *2 (C.D. Cal. Jan. 25, 2016). Thus, at the 12(b)(6) stage, "the Court can only consider the web pages 'directly quoted' in the" Complaint. *De la Cabada v. Ytel, Inc.*, 2020 WL 1156909, n.3 (N.D. Cal. Mar. 10, 2020) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). Accordingly, "for purposes of the instant motion the Court considers as incorporated by reference only those portions of [the] website cited in the complaint." *Id.*

Therefore, it logically follows that there was no basis to consider the contents of non-party Kixie's website in the R&R. The proper approach would be for Plaintiff to ask that the website be judicially noticed, but Plaintiff did not request judicial notice and the Magistrate Judge did not judicially notice the website. A fact is subject to judicial notice only if the fact "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Based on recent Fifth Circuit precedent, websites are not subject to judicial notice. In *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 584 (5th Cir. 2022), the Fifth Circuit reversed a district court's taking judicial notice of a website archive, holding that "the district court erred in taking judicial notice of the terms because

a private internet archive falls short of being a source whose accuracy cannot reasonably be questioned as required by [Evidence] Rule 201." At least one opinion in this District has held likewise. *See RapidDeploy, Inc. v. RapidSOS, Inc.*, 2022 WL 3045649, n.2 (W.D. Tex. Aug. 1, 2022) (refusing to take judicial notice of LinkedIn webpages: "LinkedIn, like the private internet archive considered by the Fifth Circuit [in *Weinhoffer*], is not 'inherently or self-evidently reliable.' *Id.* Therefore, the Court declines to take judicial notice of the webpages.").

Based on the controlling opinion in *Weinhoffer*, there is no basis to allow consideration of Kixie's web pages in deciding the motion to dismiss. They are not self-authenticating and, like the pages in *Weinhoffer* and *RapidDeploy*, are not documents "whose accuracy cannot reasonably be questioned" for purposes of FRE 201. The R&R erred by relying on the Kixie website.[3]

### c. Error to Conduct Independent Research into Third-Party Website Contents, Then Use Those Unpleaded Contents to Deny Motion

Regardless, the R&R went far beyond simply relying on whatever hearsay statements from the Kixie website Plaintiff alleged in the Complaint. Indeed, the Court conducted its own research and review of the Kixie website, quoted statements from the website that were nowhere to be found in the Complaint, then used those statements to conclude that the statements "do [not] preclude" an "inference" that Plaintiff received the calls via ATDS. (D.E. 31 at 6.) The benign principle that a court may, under limited circumstances, reference a publicly-available website does not give a court license to affirmatively comb through that website in an effort to rescue an otherwise deficient complaint and, in effect, add allegations to a complaint that did not contain them, as

---

[3] As other courts have held, "judicial notice and incorporation by reference are limited doctrines." *Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*, 2019 WL 3766654, *3 (S.D. Cal. Aug. 9, 2019); *see also In re SI Restructuring Inc.*, 480 Fed. Appx. 327, 329 (5th Cir. 2012) (noting "the narrow purpose of judicial notice"). The Magistrate Judge's expansive use of "incorporation by reference" conflicts with this legal principle.

reflected by the R&R here. That crosses the line from jurist to advocate.

Likewise, while it is true that a pro se plaintiff's pleadings are to be given a somewhat more liberal interpretation than those of a represented party, that's not what happened here. Rather than interpreting liberally what was on the printed page, the Court went far beyond that maxim and conducted its own research onto a website to create allegations that were not contained in the Complaint, then used those unpled allegations to deny the motion to dismiss. In other words, the Court selected which statements to quote, quoted those unpled (and hearsay) website statements, then declared they would be "liberally construed in favor of a *pro se* plaintiff" even though they were not even pleaded in the first instance, then held that those liberally construed unpled statements supported the conclusion that Plaintiff intended to plead "an ATDS." (D.E. 31 at 6.) Not surprisingly, the R&R does not cite any case from any jurisdiction that grants license for a court to do what occurred did here, i.e., "liberally construing" hearsay website provisions that the Court inserted into the case on its own accord. That exercise defies the law.

### d.  Cited Website Contents Not Helpful in Any Event

Even if it was not error for the Court to conduct its own research into the Kixie website, the portions of the website absent from the Complaint yet still cited in the R&R do not raise any inference of an ATDS. The R&R appears to seize on phrases from the Kixie website such as "automated outreach" and "placing a call . . . with just a single click" to rule that such (hearsay) phrases do not "preclude [an] inference" of an ATDS. (D.E. 31 at 6.) That ruling reflects a fundamental misunderstanding of the post-*Facebook* caselaw.

Simply stated, "autodialing" and using a "random or sequential generator" are entirely different concepts, and it is the latter that is required to prove an ATDS. The focus of an ATDS post-*Facebook* is not how the numbers are dialed, but how the equipment produced or generated that number to begin with. Many devices – including iPhones – can "autodial" numbers with "just

13

a single click," but that does not make an iPhone an ATDS. *See Facebook*, 141 S. Ct. at 1171 (noting that equipment must have the capacity to use a random or sequential number generator to either store or produce phone numbers to be called, because a contrary interpretation "would capture virtually all modern cell phones, which have the capacity to store telephone numbers to be called and dial such numbers") (quotations omitted). As the Court in *Atkinson* summarized: "If the equipment only stores and automatically dials numbers but does not randomly generate those numbers, it is not a prohibited ATDS under the Act. In other words, 'in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator.'" *Atkinson*, 2022 WL 4071998, *6 (quoting *Facebook*, 141 S. Ct. at 1170).

Likewise, Cardenas's alleged (hearsay) statement to Plaintiff that the calls supposedly were "autodialed" (D.E. 10, ¶ 39) does not, and cannot, equate to an allegation of an ATDS because there is no allegation that the equipment Cardenas used to make the calls generated Plaintiff's number in a random or sequential manner. Courts in this Circuit have recognized this distinction, which the R&R failed to discern. *See, e.g.*, *Forteza v. Affordable Auto Shield, Inc.*, 2024 WL 898905, *3 (N.D. Tex. Feb. 29, 2024) (quoting *Facebook* for the proposition that "to establish a claim under § 227(b), 'the equipment in question must use a random or sequential number generator,' not merely auto-dial stored numbers") (additional quotations omitted); *Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 562761, *4 (N.D. Tex. Feb. 24, 2022) (citing *Meier v. Allied Interstate LLC*, 2022 WL 171933, *1 (9th Cir. Jan. 19, 2022), as "rejecting, in light of *Duguid*, the argument that any system that stores a pre-produced list of telephone numbers and that could also autodial these stored numbers is an ATDS" and dismissing pro se complaint).

Squarely on point is *Atkinson*, where the Court recognized the distinction the R&R failed to make where, as here, the *Atkinson* plaintiff relied on contents of a website to argue in favor of

an ATDS. The Court held, in language that should apply here:

> [Plaintiff] merely points to the pages from the technology's website indicating that predictive mode is a system that "automatically dials" the numbers based on the desired calls-to-agent ratio and a selected drop-call percentage . . .. **Yet this evidence only establishes that the dialing in predictive mode is automatic, not that it involves the random and sequential production or storage of numbers, as required by _Duguid_.**

_Atkinson_, 2022 WL 4071998, *8 (emphasis added); _see also Libby v. Nat'l Repub. Sen. Comm._, 551 F. Supp. 3d 724, 728 (W.D. Tex. 2021) ("The Supreme Court has clarified that a TCPA claim does not exist whenever someone receives an unwanted call from an automated system; liability is triggered only if the automated system 'us[es] a random or sequential number generator' to store or produce the phone numbers that are called.") (quoting _Facebook_, 141 S. Ct. at 1171).

Other than quoting the "random or sequential" language of the TCPA, the R&R does not use that phrase in ruling on the ATDS issue. That was error as it was based on a misunderstanding that equipment that allegedly has the ability to "autodial" equates to an ATDS. That is simply not the law, and the R&R erred in ruling otherwise.

### 4. At a Minimum, an ATDS Was Not Used for Any Call Other Than the First One, Meaning That Claims Based on Any Calls Other Than the First Call Should Be Dismissed.

The R&R all but conceded that no ATDS was used after the first call. Indeed, the Complaint essentially admits this dispositive fact. (_See_ D.E. 10, ¶ 58(c) (alleging that "Cardenas placed twelve (12) phone calls to Plaintiff"), ¶ 37 (asserting that "Plaintiff received a series of telemarketing phone calls from Cardenas").) Clearly, after the initial call, Cardenas and Plaintiff engaged in a series of individualized, targeted communications concerning Plaintiff's expressed interest in solar products. Yet, the R&R seemed to hold that if the initial call allegedly was made via ATDS, then every other call must also have been made by ATDS. Not only is such a ruling implausible, it defies logic.

Indeed, the Supreme Court mandates that, to qualify as an ATDS, a device must "produce a telephone number using a random or sequential number generator." *Facebook*, 141 S. Ct. at 1167. The first contact having been made from Cardenas to Plaintiff (which, the proof will show, was not made from a device that would qualify as an ATDS), Cardenas and Plaintiff then engaged in a series of calls (and texts) that were specific in nature and, clearly, were not random. Not only is it implausible, but it is impossible that Cardenas made those subsequent calls via a device that generated Plaintiff's number in a random and sequential method as *Facebook* requires. Cardenas specifically targeted Plaintiff with the subsequent calls based on Plaintiff's admitted consent to receive them and the fact that Cardenas had Plaintiff's phone number. It would plainly violate the binding Supreme Court precedent of *Facebook* to hold that these calls were made via an ATDS.

In short, even if the first call to Plaintiff was made via a device that used a random and sequential generator (which, again, Freedom Forever denies and which will not be the evidence), having obtained Plaintiff's consent for future calls, those subsequent calls were targeted, direct, individualized, and made in person by Cardenas. The plain language of the Complaint reveals that they were not, and could not have been, made using an ATDS. Therefore, even if the Court believes the initial call was made via an ATDS, it should, at a bare minimum, dismiss the § 227(b) claim based on all calls after the initial call.

* * * * * * * * *

In essence, the R&R reduces the pleading requirements for an ATDS to practically nil. The R&R ignored this District's leading reported opinion of *Suttles*, which anticipated the Supreme Court's 2021 ruling in *Facebook* by requiring that TCPA plaintiffs whose claims require use of an ATDS must plead that the allegedly violative calls were made from "equipment that has 'the capacity either to store a telephone number using a random or sequential generator' or 'to produce

16

a telephone number using a random or sequential number generator.'" *Atkinson*, 2022 WL 4071998, *6 (quoting *Facebook*, 141 S. Ct. at 1167). The R&R also ignored this District's leading post-*Facebook* ATDS opinions of *Samarato* and *Atkinson*, instead affirmatively researching and citing statements from a third-party website that are not contained in the Complaint, are plainly hearsay, and do not help Plaintiff anyway because the R&R erroneously equated the ability to "autodial" with an "ATDS," which clearly is not the law after *Facebook*. In light of these numerous legal errors, Freedom Forever's objections to the R&R should be sustained and Plaintiff's TCPA claim based on the use of an ATDS should be dismissed.[4]

## III.   PLAINTIFF'S PRAYER FOR PERMANENT INJUNCTIVE RELIEF SHOULD BE DISMISSED, AND THE R&R ERRED IN RULING OTHERWISE.

Plaintiff seeks a permanent injunction. (*See* D.E. 10, ¶ 95; *id.* at 18.). The problem with the R&R's ruling denying the motion to dismiss the request for an injunction is that the court did not assess Plaintiff's standing to obtain any sort of injunction, whether preliminary or permanent. The 36-year-old case the R&R cited predated the long line of cases holding that a plaintiff seeking an injunction must plead and prover standing to obtain the injunction.

Furthermore, this is a Rule 12 motion. Rule 12 motions, of course, challenge the sufficiency of the pleadings – in this case, the Complaint. Whatever the relief or claim alleged, the plaintiff must set forth the proper allegations and standards for that relief. To allow this Plaintiff (or any other) to request permanent injunctive relief without ever pleading the standards for that relief is no different than allowing a plaintiff suing for breach of contract to maintain such a claim without pleading the existence of the contract in the first instance. Pleading standards should not be so lax

---

[4] Plaintiff seems to concede that he does not base any claims on allegations of the TCPA's "artificial or prerecorded voice" provisions, 47 U.S.C. § 227(b)(1)(A)(iii).

as to allow this sort of remedial request to move forward in the total absence of pleading the standards to obtain such relief.

"Because the ultimate purpose of an injunction is to prevent future harm, 'a petitioner must show a clear threat of continuing illegality portending immediate harmful consequences irreparable in any other manner.'" *Hunsinger v. 204S6TH, LLC*, 2022 WL 1110354, *10 (N.D. Tex. Mar. 23, 2022) (citing *Posada v. Lamb Cty., Tex.*, 716 F.2d 1066, 1070 (5th Cir. 1983)). Plaintiff "does not allege facts to show a realistic likelihood of a future TCPA violation by" Freedom Forever. *Id.* (citing *Posada*, 716 F.2d at 1070); *see also Shields v. Gawk Inc.*, 2019 WL 1787781, *6 (S.D. Tex. Apr. 24, 2019) ("With no imminent threat of repeated violations of the TCPA . . ., the Court sees little reason to invoke its equitable powers and impose permanent injunctive relief."), *R&R adopted*, 2019 WL 2103423 (S.D. Tex. May 14, 2019). Here, Plaintiff makes no allegation of an "imminent threat of repeated violations of the TCPA" as required to request forward-looking injunction relief.  Nor does he allege that the statutory damages he seeks are an inadequate remedy at law.  The R&R erred in refusing to recommend dismissal of Plaintiff's request for injunctive relief.

## CONCLUSION

While Plaintiff may be "afford[ed] . . . some leeway as a *pro se* party," the Court "need not bend over backwards to indulge his pleadings." *Johnson v. Metro. Direct Prop. & Cas. Ins. Co.*, 2018 WL 4964504, *2 (D.D.C. Oct. 15, 2018). But that is what the R&R does here. The R&R (1) failed to address Plaintiff's admitted consent to receive all calls after the first one; (2) ignored – by failing to cite – controlling Supreme Court authority on the standards for pleading and proving an ATDS; (3) created new law by holding that speaking with a live person – especially the same live person – entirely undercuts any possibility of ATDS use; and (4) conducted its own research into

18

a third-party website to create facts and allegations not contained in the Complaint, then used those unpled allegations to deny the motion to dismiss based on a misunderstanding of what is required to allege and prove an ATDS post-*Facebook*. Any of these reasons is sufficient to reject the R&R; taken together, they demonstrate serious errors of law that have no support in the applicable case law. Accordingly, Freedom Forever respectfully requests that the Court dismiss Plaintiff's First Amended Complaint.

DATED: April 16, 2024

/s/ William J. Akins
William J. Akins
State Bar No. 24011972
william.akins@pierferd.com
PIERSON FERDINAND
*MAIL*: 10501 Crow Wing Cove
Austin, Texas 78730
*OFFICE*: 2021 Guadalupe Street, Suite 260
Austin, Texas 78705
Telephone: (214) 924-9504
Facsimile: (214) 279-7192
ATTORNEYS FOR DEFENDANT
FREEDOM FOREVER TEXAS

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and also served the Plaintiff by U.S. Mail as follows:

BRANDON CALLIER
6336 Franklin Trail Drive
El Paso, Texas  79912

*/s/ William J. Akins*
William J. Akins