**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **EP-23-cv-00364-FM** |
| § | |
| **FREEDOM FOREVER TEXAS,** a Delaware § | |
| Limited Liability Company, and **EMPOWERED** § | |
| **SOLUTIONS**, **MITCHELL FRAKER**, and § | |
| **AURORA SOLAR, INC.,** a Delaware Corporation § | |
| § | |
| **Defendants.** § | |
| § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

COMES NOW Plaintiff Brandon Callier with his Second Amended Complaint and will allege and show as follows:

**PARTIES**

1.      Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2.      Defendant FREEDOM FOREVER TEXAS, LLC ("Freedom" or "Freedom Forever") is a corporation organized and existing under the laws of Delaware and can be served via registered agent Corporation Service Company, dba CSC-Lawyers INCO, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3.      Defendant EMPOWERED SOLUTIONS ("Empowered") is an unknown business entity located in Florida, operating the website https://www.empoweredsolutions.com.  Empowered's

1

website does not have an address, phone number, or any contact information.

4.      Defendant MITCHELL FRAKER ("Fraker") is a principal owner and founder of Defendant Empowered, personally participated in and directed the alleged activities herein, and can be served at 2932 SE Buccaneer Circle, Port Saint Lucie, Florida 34952.

5.      Defendant AURORA SOLAR, INC. ("Aurora") is a corporation organized and existing under the laws of Delaware and can be served via registered agent Incorporating Services, LTD., 3500 S Dupont Highway, Dover, Delaware 19901.

**JURISDICTION AND VENUE**

6.      Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7.      This Court has general personal jurisdiction over Defendant Freedom because Defendant Freedom maintains physical offices in Texas including in this very District.

8.      This Court has specific personal jurisdiction over Defendants Empowered and Fraker because Empowered and Fraker purposefully directed telephone calls into the State of Texas and intentionally spoofed Texas area codes in order to represent themselves as being located and operating in the state of Texas.

9.      This Court has specific personal jurisdiction over Defendant Aurora because Aurora purposefully directed telephone calls into Texas and purposefully availed themselves of the laws and protections of this state.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District.  Residing in the Western District of Texas when Plaintiff

received every single unauthorized call from Defendants is the subject matter of this lawsuit.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

11.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls are

a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

12.    The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone

line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely

pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.    The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(b). 47 U.S.C. § 227(b)(3).

15.    Separately, the TCPA bans telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16.    The TCPA provides a private cause of action to persons who receive calls in violation of

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017)
(codifying a June 26, 2003 FCC order).

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

20.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.    The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either

4

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

24.     Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

25.     Defendant Freedom offers solar panel services.

26.     Plaintiff received a series of solicitation phone calls from Defendant Freedom in March and April 2023.

27.     Plaintiff made a Do Not Call ("DNC") request to Defendant Freedom via telephone on April 9, 2023.

28.     On April 13, 2023, Plaintiff sent a demand letter and a second DNC request to Defendant Freedom at the email address customersupport@freedomfover.com.  The demand letter stated, "Please communicate with me via email.  Do not call me anymore on my personal phone at (915)

383-4604.   Exhibit A.

29.   On April 13, 2023, Defendant Freedom emailed Plaintiff stating, "Your request (173968) has been received and is being reviewed by our Customer support staff.   Exhibit B.

30.   Defendant Freedom continued to contact Plaintiff through its authorized representatives despite Plaintiff giving Defendant Freedom two DNC requests.

31.   Plaintiff's DNC requests terminated any potential "established business relationship" defense that Defendant Freedom could have asserted as a defense is nullified because a subscriber's "do-not-call request . . . terminates an established business relationship for the purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller."   47 C.F.R. § 64.1200(f)(5)(i).

32.   Plaintiff sent a third DNC request to Defendant Freedom on September 26, 2023, to the email address legal@freedomforever.com alerting them of the unwanted phone calls.   Steven Wysong, Compliance Support Specialist, answered Plaintiff DNC email the same day on September 26, 2023, acknowledging Plaintiff's email.   Exhibit C.

33.   Defendant Empower solicits solar panels for and on behalf of Defendant Freedom.

34.   Plaintiff received a series of anonymous phone calls from an offshore telemarketer soliciting solar panels.   Those phone calls number in the hundreds but are not a part of this Complaint.

35.   Defendant Freedom filed a Motion to Dismiss ("MTD") on November 3, 2023.   As part of that MTD Defendant Freedom included a transcription of a phone call in which Freedom alleges Plaintiff gave his express consent for the phone calls made by Defendant Empower.   The transcript states:

      CALLER: "Would you allow our expert to reach you back [even] if your number is listed

on federal, state, or local do-not-call lists?"

PLAINTIFF: Yes.

36.     Plaintiff responded "yes" in paragraph 28 in order to determine who had hired the anonymous telemarketer to place the phone calls.

37.     The request for consent in paragraph 28 is not a request for consent to receive phone calls made using an ATDS and is not applicable to 227(b).

38.     The request for consent in paragraph 28 is ambiguous and not specific to any company. It is anonymous in nature and does not give Defendant Freedom or Defendant Empower permission to make any phone calls to Plaintiff.

39.     Plaintiff received at least thirteen (13) unauthorized calls to his personal cell phone ending in 4604 from Defendant Freedom from September 18, 2023, to September 25, 2023, soliciting solar panel installation.

40.     Plaintiff never gave Defendant Empower permission to call him with intentionally spoofed telephone numbers that were generated using auto-dialing technology and auto-dialing systems.

41.     Each of the phone calls in this Complaint is a robocall made utilizing robocalling software that spoofs caller identification.  The software is called Kixie.

42.     The Kixie website, https://www.kixie.com, boasts that Kixie, "Intelligent auto-dial helps you reach your leads when buying intent is highest."

43.     The Kixie website advertises, "Automated outreach for lightning fast speed-to-lead."

44.     Plaintiff received a series of telemarketing phone calls from Cardenas.  Each of the phone calls was answered by Plaintiff and had a 915-area code that made the call appear as though it were local.

45.     Plaintiff has outlined each of the phone calls in Table A.

46.     When Plaintiff received the twelfth phone call Plaintiff answered and asked Cardenas why he keeps calling him from a 915-area code if he (Cardenas) is located in Florida.  Cardenas responded by telling Plaintiff that the calls are "autodialed" and use "spoof caller ID to make the calls appear local."

47.     Cardenas sent Plaintiff a text message saying, "Apologize for the confusion of numbers."

48.     Plaintiff later sent Cardenas a text message asking, "What's the name of that spoofing technology?"

49.     Cardenas responded to Plaintiff's question in paragraph 41 by asking Plaintiff, "The local call feature?"  Plaintiff responded, "Yes," and Cardenas responded by telling Plaintiff, "Kixie."

50.     Cardenas is an authorized Freedom representative, employee and/or agent.

51.     Through information and belief, Cardenas called Plaintiff additional times that will be revealed during Discovery.

52.     On October 12, 2023, Plaintiff began to receive phone calls that displayed 209-457-2342 on the caller identification.

53.     Plaintiff received at least eleven (11) calls from phone number 209-457-2342 on October 19, 2023, alone.

54.     On October 19, 2023, Plaintiff answered the phone and an offshore telemarketer said "he was calling to confirm my solar appointment."

55.     On October 19, 2023, Plaintiff had an appointment with an Aurora Solar representative as a direct result of the appointment set by the telemarketer calling from phone number 209-457-2342.

56.     On October 19, 2023, Defendant Auora sent Plaintiff an email from do-not-

reply@auorasolar.com that contained a link to a Freedom Forever solar proposal.

57.    The link in paragraph 49 has since expired.  Plaintiff will get access to the link that contains the name and contact information of the agent during discovery.

58.    On April 5, 2024, Plaintiff received a phone call that displayed 925-285-6205 on Plaintiff's caller identification.  Plaintiff answered the phone call and was solicited solar panel installation by Trinidad Guzman "Guzman."

59.    Plaintiff played along with Guzman because Plaintiff had a reasonable belief that Freedom Forever was the company on whose behalf the solar panels would be solicited.

60.    Plaintiff scheduled a solar consultation with Guzman, and on April 9, 2024, Plaintiff was emailed a solar contract proposal from Freedom Forever from do-not-reply@aurorasolar.com.

61.    Each of the phone calls in this case was delivered to Plaintiff after Plaintiff had made multiple DNC requests to Defendant Freedom.

62.    Table A shows the calls sent to Plaintiff by Defendant Freedom.

TABLE A:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| **1.** | 09/18/2023 | 11:13 AM | 915-265-9208 | Auto dialing technology with spoofed caller ID |
| **2.** | 09/19/2023 | 4:46 PM | 915-289-9269 | Auto dialing technology with spoofed caller ID |
| **3.** | 09/20/2023 | 11:27 AM | 915-265-0306 | Auto dialing technology with spoofed caller ID |
| **4.** | 09/21/2023 | 12:51 PM | 915-755-6176 | Auto dialing technology with spoofed caller ID |
| **5.** | 09/22/2023 | 8:09 AM | 915-265-1338 | Auto dialing technology with spoofed caller ID |
| **6.** | 09/22/2023 | 3:50 PM | 915-841-6965 | Auto dialing technology with spoofed caller ID |

| 7. | 09/22/2023 | 5:32 PM | 915-895-7581 | Auto dialing technology with spoofed caller ID |
| 8. | 09/22/2023 | 9:10 AM | 915-895-7597 | Auto dialing technology with spoofed caller ID |
| 9. | 09/25/2023 | 9:52 AM | 915-726-5832 | Auto dialing technology with spoofed caller ID |
| 10. | 09/25/2023 | 10:16 AM | 915-328-7970 | Auto dialing technology with spoofed caller ID |
| 11. | 09/25/2023 | 11:16 AM | 915-895-7581 | Auto dialing technology with spoofed caller ID |
| 12. | 09/25/2023 | 1:51 PM | 915-289-9103 | Auto dialing technology with spoofed caller ID |
| 13. | 09/25/2023 | 4:17 PM | 862-362-5001 | Direct call from Cardenas after being told to stop calling |

63.     TABLE B Shows Calls Made by an Unknown Telemarketer on Behalf of Defendant

Freedom.

TABLE B

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 10/12/2023 | 5:39 PM | 209-457-2342 | Offshore Telemarketer |
| 2. | 10/16/2023 | 9:13 AM | 209-457-2342 | Offshore Telemarketer |
| 3. | 10/18/2023 | 9:31 AM | 209-457-2342 | Offshore Telemarketer |
| 4. | 10/18/2023 | 10:15 AM | 209-457-2342 | Offshore Telemarketer |
| 5. | 10/18/2023 | 10:17 AM | 209-457-2342 | Offshore Telemarketer |
| 6. | 10/18/2023 | 2:38 PM | 209-457-2342 | Offshore Telemarketer |
| 7. | 10/18/2023 | 3:37 PM | 209-457-2342 | Offshore Telemarketer |

| | | | | |
|---|---|---|---|---|
| **8.** | 10/18/2023 | 4:17 PM | 209-457-2342 | Offshore Telemarketer |
| **9.** | 10/19/2023 | 2:26 PM | 209-457-2342 | Offshore Telemarketer |
| **10.** | 10/19/2023 | 2:56 PM | 209-457-2342 | Offshore Telemarketer |
| **11.** | 10/19/2023 | 3:12 PM | 209-457-2342 | Offshore Telemarketer |
| **12.** | 10/19/2023 | 3:19 PM | 209-457-2342 | Offshore Telemarketer |
| **13.** | 10/19/2023 | 3:26 PM | 209-457-2342 | Offshore Telemarketer |
| **14.** | 10/19/2023 | 3:34 PM | 209-457-2342 | Offshore Telemarketer |
| **15.** | 10/19/2023 | 3:39 PM | 209-457-2342 | Offshore Telemarketer |
| **16.** | 10/19/2023 | 3:40 PM | 209-457-2342 | Offshore Telemarketer |
| **17.** | 10/19/2023 | 4:04 PM | 209-457-2342 | Offshore Telemarketer |
| **18.** | 10/19/2023 | 4:15 PM | 209-457-2342 | Offshore Telemarketer |
| **19.** | 10/19/2023 | 4:53 PM | 209-457-2342 | Offshore Telemarketer |

64.    Table C shows phone calls made by Trinidad Guzman

TABLE C

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| **1.** | 02/05/2024 | 5:52 PM | 925-285-6205 | Missed Call |
| **2.** | 02/06/2024 | 5:41 PM | 925-285-6205 | Missed Call |
| **3.** | 03/04/2024 | 5:55 PM | 925-285-6205 | Call Dropped |

| 4. | 03/13/2024 | 7:30 PM | 925-285-6205 | Missed Call |
| 5. | 04/05/2024 | 5:47 PM | 925-285-6205 | Set appointment |
| 6. | 04/09/2024 | 4:20 PM | 925-285-6205 | Sent contract proposal from Freedom Forever |

65.    Plaintiff never gave his consent to Defendants to receive robocalls, auto-dialed calls, or spoofed phone calls.

66.    Each of the phone calls alleged in this Complaint is a knowing and willful because caller identification can only be spoofed by intentional means.

67.    No emergency necessitated any of the alleged calls.

68.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

69.    Plaintiff infers an ATDS was used in the Table A calls because:

a.    On September 25, 2023, Jorge Cardenas literally told Plaintiff that he used an "autodialer" to make the phone calls to Plaintiff.

b.    Through information and belief Jorge Cardenas has a better and more intimate knowledge of the equipment he used to call Plaintiff.

c.    Cardenas placed twelve (12) phone calls to Plaintiff each with a different caller identification number showing.

d.    Cardenas told Plaintiff the name of the autodialing system used to make the phone calls and gave plaintiff the website where the autodialing system could be purchased.

e.    The website given to Plaintiff by Cardenas, http://www.kixie.com, advertises "automated outreach," "automation platforms," "automated calling & texting,"

and "intelligent auto-dial" on its website, further corroborating Cardenas'

assertion that he used an auto-dialing system obtained from Kixie in order to call

Plaintiff.

## PRIOR EXPRESS CONSENT

70.    The FTC rules require that the requested consent be clear and conspicuous in that the

consumer will receive future calls that deliver prerecorded messages and autodialed messages by

or on behalf of a specific seller.

71.    Consent under the TCPA cannot be anonymous or ambiguous.  Obtaining "consent" on

behalf of unnamed companies is not permissible as it would theoretically allow every company

in the country to claim they gained consent from a single ambiguous opt-in.

72.    The Defendants in this case did not get Plaintiff's prior consent to send automated

messages.

73.    Under the TSR, the seller bears the burden of proving that a clear and conspicuous

disclosure was provided and that unambiguous consent was obtained.

74.    Neither Defendant Freedom or Defendant Empower obtained consent from Plaintiff to

send automated phone calls to Plaintiff.

## VICARIOUS LIABILITY OF DEFENDANT FREEDOM

75.    Defendant Freedom through their authorized representative Empower made multiple

auto-dialed robocalls to Plaintiff and intentionally spoofed the phone numbers.

76.    Empower used utilizing software provided by Freedom.

77.    Cardenas uses proprietary information and systems provided by Defendant Freedom.

78.    Freedom authorized Cardenas to make the phone calls at issue here.

79.    Freedom was aware of the phone calls being made by Cardenas and accepted referrals

from Cardenas pursuant to the authorization provided to Cardenas by Freedom.

80.    Freedom Forever gave access to their proprietary systems and software to Defendants Empowered and Aurora.

81.    Aurora hired an offshore telemarketer to make phone calls on their behalf.  Aurora is the agent of Freedom Forever and the offshore telemarketer is the subagent of Freedom Forever.

82.    Empowered and Aurora made the phone calls at the direction and control of Freedom Forever.

83.    Freedom Forever exercised interim control over whom and under what conditions referrals would be accepted.

84.    Freedom Forever has been aware of the TCPA-violating phone calls made by salespersons for years and has ratified the behavior by maintaining the salespeople responsible for the violations and continuing to accept referrals despite the knowledge of the violations.

### FREEDOM FOREVER RATIFIED THE PHONE CALLS

85.    Freedom Forever was delivered DNC requests by Plaintiff on April 9, 2023, and April 17, 2023.

86.    Freedom Forever was fully aware of Plaintiff's desire to not be called and solicited for solar panels.

87.    On September 20, 2023, Defendant Freedom, with full knowledge of Plaintiff's desire to not be called and solicited, received and processed a solar panel application that was the result of unauthorized phone calls.  To this point, Defendant Freedom had received two DNC requests and had six months with which to comply.

88.    On September 26, 2023, Plaintiff delivered his third DNC request to Defendant Freedom.

89.    On October 13, 2023, Defendant Freedom was served with the Complaint and Summons

for case 3:23-cv-00364-FM, which was effectively a fourth notification that Plaintiff did not

want, or consent to phone calls by, or on behalf of Defendant Freedom.

90.   On April 9, 2024, Defendant Freedom accepted yet another referral of Plaintiff's

information that was generated via solicitation phone calls.  Defendant Freedom accepted this

referral with full and complete knowledge that Plaintiff did not consent to the phone calls.

91.   Defendant Freedom received four DNC requests from Plaintiff and had exactly one year

to stop accepting referrals of Plaintiff's information.

92.   Defendant Freedom was consciously accepting referrals of Plaintiff's information with

full awareness the phone calls were violating the TCPA and that Plaintiff had delivered four

DNC requests to Defendant Freedom.

**PERSONAL LIABILITY OF DEFENDANTS PIERCE AND FRAKER**

93.   Defendant Mr. Fraker personally participated in the texts at issue because Defendant

Fraker personally directed the text messages to be sent to Texas residents with Texas area codes.

94.   Fraker is the principal officer of Defendant Empowered.

95.   Fraker closely holds Defendant Empowered and is intimately involved in all decision-

making and legal activities of Defendant Empowered.

96.   Mr. Fraker, made the decision to purchase auto dialing spoofing technology, trained their

employees on the use of such technology, and directed their employees to use the technology

with the intention of breaking state and federal laws.

97.   Defendant Fraker has direct and personal involvement in and ultimate control over every

aspect of Defendant Empowered's wrongful conduct that violated the TCPA, and/or directly

controlled and authorized this conduct.

98.   Defendant Fraker at all times relevant to this Complaint acting alone or in concert with

others, formulated, directed, controlled, had the authority to control, or participated in the acts

and practices set forth in this Complaint,

99.     There is precedent in the Western District for holding corporate officers personally liable

when they participate in the alleged actions:

> "If the officer directly participated in or authorized the statutory violation, even
> though acting on behalf of the corporation, he may be personally liable.  See
> *United States v Pollution Serv. Of Oswego, Inc*., 763 F.2d 133, 134-135 (2nd
> Cir.1985)

> The "well-settled" tort rule provides that "when corporate officers directly
> participate in or authorized the commission of a wrongful act, even if the act is
> done on behalf of the corporation, they may be personally liable." *General Motos
> Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit
> has elaborated that "the thrust of the general [tort] rule is that the officer to be
> held personally liable must have some direct, personal participation in the tort, as
> where the defendant was the 'guiding spirit' behind the wrongful conduct....or the
> 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg.
> Corp*., 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho
> Pharmaceutical Corp*., 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v.
> American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

> Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer
> may be personally liable under the TCPA if he had direct, personal participation
> in or personally authorized the conduct found to have violated the statute, and was
> not merely tangentially involved.  Individuals who directly (and here, knowingly
> and willfully) violate the TCPA should not escape liability solely because they are
> corporate officers.  As the State persuasive argues, to hold otherwise would allow
> the individual defendants to simply dissolve Blastfax, set-up a new shell
> corporation, and repeat their conduct.  Congress surely did not intend to permit
> such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an
> the "central figures" behind the TCPA violations.  They were the two persons
> who controlled all of Blastfax's day-to-day operations.  They both had direct,
> personal involvement in and ultimate control over every aspect of Blastfax's
> wrongful conduct that violate the TCPA, and/or directly controlled and authorized
> this conduct.  And they did so with their eyes and pocketbooks wide open.  After
> October 5, 2000, Greg and Michael Horne had good reason to believe they were
> running a business that violated the TCPA.  On February 9, 2001, they knew they
> were.  Yet they continued to direct their company to send unsolicited intrastate

fax advertisements.  This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

100.   The Same Court held that corporate officers were also personally liable for DTPA violations;

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

101.   Defendant Fraker is the manager and owner of Defendant Empowered and controls the day-to-day operations of Empowered and directs their employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

102.   **Defendant** Mr. Fraker is not merely a bystander.  He is the mastermind that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

103.   **Defendant** Fraker is well aware their conduct violated the TCPA and refused to alter their behavior.  **Defendant Fraker is the principal** director and officer of Defendant Empowered and the only person with the power to make unlawful, fraudulent, and unethical behavior stop

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

104.   Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

105.    Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

106.    Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

107.    Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER**

108.    The calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 17 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**<u>COUNT ONE:</u>**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))**
**(Against Defendants Freedom and Empowered)**

109.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-108.

110.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent.

111.    The phone calls were made using and ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

112.    Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

113.    Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

114.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## COUNT TWO

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

### (Against Defendants Freedom and Aurora)

115.    Plaintiff incorporates the preceding paragraphs 1-108 as if fully set forth herein.

116.    The foregoing acts and omissions of Defendants Freedom and Aurora and/or their affiliates or agents constitute and violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2),

117.    Defendants Freedom and Aurora sent at least thirty-eight (38) phone calls to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-

Call Registry more than thirty-one (31) days prior to the phone calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

118.    Plaintiff was statutorily damaged at least thirty-eight (38) times under 47 U.S.C. § 227(c)(3)(F) by Defendants Freedom and Aurora's calls described above, in the amount of $500 per phone call.

119.    Plaintiff is entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(3)(F).

120.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.    An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1,500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against Defendants Freedom and Empowered for twelve (12) calls;

E.      An award of $1,500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against Defendants Freedom and Aurora for thirty-eight (38) calls.

F.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.      An award to Mr. Callier of interest, and costs, as allowed by law and equity;

H.      Such further relief as the Court deems necessary, just, and proper;


April 18, 2024,                                     Respectfully submitted,

                                                    /s/ Brandon Callier

                                                    Plaintiff, Pro Se
                                                    1490A George Dieter Drive
                                                    #174
                                                    El Paso, TX 79936
                                                    915-383-4604
                                                    Callier74@gmail.com

21

# EXHIBIT A

 Gmail

Brandon Callier <brencallie6316@gmail.com>

## (Attn: Jessica Sumikawa & Brett Bouchy) Callier v Freedom Forever, LLC d/b/a Freedom Forever Texas, LLC

1 message

**Brandon Callier** <brencallie6316@gmail.com>
To: customersupport@freedomforever.com

Thu, Apr 13, 2023 at 1:31 PM

Dear Ms. Sumikawa and Mr. Bouchy,
   I have received at least seven unauthorized phone calls from Freedom Forever, LLC d/b/a Freedom Forever Texas, LLC. These solicitation calls are in violation of the TCPA.  I'm in the process of drafting a lawsuit against Freedom Forever, LLC d/b/a Freedom Forever Texas, LLC that will be filed in the Western District of Texas. In good faith I'm reaching out directly to see if you would like to resolve this matter directly versus me filing a lawsuit. If I don't hear a response back by Thursday April 27, 2023 COB, I will assume there is no interest and will be filing the lawsuit on Friday April 28, 2023.
My demand offer is as follows:

There at seven (7) calls at issue

| DATE CALLED - 915-383-4604 | CALLER ID | Time | LENGTH OF TIME |
|---|---|---|---|
| 3/13/2023 | 346-398-6196 | 1:15 PM | 5 MINUTES |
| 3/13/2023 | 346-398-6196 | 3:38 PM | Missed Call |
| 3/17/2023 | 346-398-6196 | 9:34 AM | Declined Call |
| 4/7/2023 | 346-398-6196 | 12:21 PM | 8:11 sec |
| 4/7/2023 | 346-398-6196 | 12:31 PM | 7:26 sec |
| 4/7/2023 | 346-398-6196 | 1:07 PM | 3:28 sec |
| 4/9/2023 | 346-398-6196 | 12:10 PM | Advised to stop calling |

227(c) - 7 calls @ $500 = $3,500 for my number being registered on the National DNC ($1,500 per call if court finds these knowing and willful)

**Total max value $10,500**

My demand offer to settle this matter is ████ This is a reasonable compromise that doesn't seek max damages and saves additional attorney's fees. Please let me know. Thank you.

Please communicate with me via email. Do Not call me anymore on my personal phone at (915)-383-4604

Regards,
Brandon Callier

# EXHIBIT B

                                    **Brandon Callier <brencallie6316@gmail.com>**

---

## [Request received]
1 message

---

**Freedom Forever** <customersupport@freedomforever.com>              Thu, Apr 13, 2023 at 1:31 PM
Reply-To: Freedom Forever <customersupport@freedomforever.com>
To: Brandon Callier <brencallie6316@gmail.com>

Your request (173968) has been received and is being reviewed by our Customer support staff.

To add additional comments, reply to this email.

Thank you,
Customer Support

---

This email is a service from Freedom Forever. Delivered by **Zendesk**

[KP8O3L-0K9O7]

# EXHIBIT C

 Gmail

**Brandon Callier <callier74@gmail.com>**

---

## Fwd: info
2 messages

---

**Brandon Callier** <bcallier13@gmail.com>
To: Brandon Callier <callier74@gmail.com>

Wed, Sep 27, 2023 at 7:54 AM

---------- Forwarded message ---------
From: **Steven Wysong** <stwysong@freedomforever.com>
Date: Tue, Sep 26, 2023 at 3:05 PM
Subject: RE: info
To: Brandon Callier <bcallier13@gmail.com>, Legal <Legal@freedomforever.com>

Hello,

My name is Steven Wysong, and I am a Compliance Support Specialist here at Freedom Forever. I have reviewed your letter and conducted an internal investigation into your allegations. In looking into this matter, I am unable to locate any information relating to you or your phone number. As such, no calls were made by our company to your phone number, (915) 383-4604, and we reject your claims. We are prepared to defend ourselves and reserve the right to bring any available counterclaims such as TCPA fraud.

Thank you,

### Steven Wysong
Compliance Support Specialist
**Freedom Forever**  |  Solar Disruption Theory



**NOTICE:** *This email is from an attorney, its staff, and/or legal department; its text and any attachments may be legally  privileged, and may include confidential or proprietary information.  This email and any attachments are intended only for the named recipient(s); if you are not the named recipient and/or have received this information in error, you are not authorized to copy, print, share, save or rely upon this email or any attachments; instead, please notify the sender by reply and immediately destroy this email and any attachments.*

---

**From:** Brandon Callier <bcallier13@gmail.com>
**Sent:** Tuesday, September 26, 2023 11:55 AM
**To:** Legal <Legal@freedomforever.com>
**Subject:** info

I have been bombarded and harassed with a series of phone calls from your company. I am willing to settle this matter for $20,000. I will attach my lawsuit that is ready to file on October 4, 2023 if I don't hear from you.

I take my privacy rights very seriously.  I have filed more than 100 TCPA lawsuits in an effort to protect my privacy. Please respond to me by October 3, 2023, if you are interested in working this matter out without the need for litigation.  If I don't hear from you I will assume you would rather resolve this through the Courts and I will file suit in the Western District of Texas.

Thank you,

Brandon Callier

 915 383 4604

Sender notified by
Mailtrack

Sender notified by
Mailtrack

**2 attachments**

**image001.gif**
91K

**image001.gif**
91K

**Brandon Callier** <callier74@gmail.com>                                    Wed, Sep 27, 2023 at 8:01 AM
To: Brandon Callier <bcallier13@gmail.com>

My draft complaint clearly states where the phone calls originated from, and through whom they originated.  You obviously did not investigate my claims.  We will do that investigation during discovery.

Thank you for your response.   I look forward to giving you the opportunity to defend yourself.

[Quoted text hidden]

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **EP-23-cv-00364-FM** |
| § | |
| **FREEDOM FOREVER TEXAS,** a Delaware § | |
| Limited Liability Company, and **EMPOWERED** § | |
| **SOLUTIONS, MITCHELL FRAKER,** and § | |
| **AURORA SOLAR, INC.,** a Delaware Corporation § | |
| § | |
| **Defendants.** § | |
| § | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2024, I caused a true copy of Plaintiff's Motion for Leave to File Plaintiff's Second Amended Complaint to be served on all parties via the Court's CM/ECF system.  Plaintiff further mailed a true copy of the foregoing to:

Auroa Solar, Inc
c/o Incorporating Services, LTD
3500 S Dupont Highway
Dover, Delaware 19901

Mitchell Fraker
2932 SE Buccaneer Circle
Port Saint Lucie, Florida 34952

Empowered Solutions
c/o Mitchell Fraker
2932 SE Buccaneer Circle
Port Saint Lucie, Florida 34952

April 18, 2024,                                   Respectfully submitted,


                                                  /s/ Brandon Callier


                                                  Brandon Callier
                                                  Plaintiff, Pro Se

1490A George Dieter Drive
#174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com